**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| LISA HODGES HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:12-cv-327 |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lisa Hodges Hall ("Hall") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Hall alleges that the ALJ failed to properly consider the opinion of a physician's assistant, and improperly assigned no weight to the opinion of her treating psychologist. Hall also asserts that the case should be remanded to the Commissioner to consider new evidence submitted to the Appeals Council and the Court.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that the ALJ's decision is supported by substantial evidence. As such, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 20) and **DENYING** Hall's Motion for Summary Judgment. Dkt. No. 16.

---
[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

1

## **STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Hall failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Hall bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Hall was born on July 19, 1966 (Administrative Record, hereinafter "R." at 121), and is considered a younger person under the Act. 20 C.F.R. § 404.1563(c). Hall is insured through December 31, 2014. (R. 17); therefore, she must show that her disability began before the end of her insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Hall completed the twelfth grade in school. R. 38. She was previously employed as a retail sales department

manager (heavy, semi-skilled work), a sander (light, unskilled work), a dietary aide (medium, unskilled work), and a restaurant manager (light, skilled work.) R. 53–54.  Hall reported that during the relevant period, she had the capacity to prepare simple meals, perform light housework, grocery shop once a month using a wheelchair, and talk to friends and family. R. 155–62.

## Claim History

Hall filed for DIB on February 8, 2010, claiming that her disability began on December 8, 2009, due to manic depression, degenerative disc joint disease, a tear of the right knee and chronic obstructive pulmonary disease ("COPD"). R. 123, 136, 143.  The state agency denied her application at the initial and reconsideration levels of administrative review.  R. 64, 72.  On January 20, 2011, ALJ Brian P. Kilbane held a hearing to consider Hall's disability claim. R. 35–60.  Hall was represented by an attorney at the hearing, which included testimony from Hall and vocational expert Barry Stephen Hensley, Ed.D. R. 35–60.

On February 25, 2011 the ALJ entered his decision denying Hall's claims.  R. 17–29. The ALJ found that Hall suffered from the severe impairments of obesity, status post right hemi-knee replacement and degenerative disc disease of the lumbar and cervical spine. R. 19.  The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22.  The ALJ further found that Hall retained the residual functional capacity ("RFC") to perform light work, except that she can frequently lift up to twenty pounds and occasionally lift up to fifty pounds; stand and/or walk four hours in an eight-hour day; and sit for eight hours in an eight-hour day.  The ALJ also found that Hall must be able to alternate between sitting and standing; is limited in her ability to push/pull with her right lower extremity; can occasionally climb, balance, and stoop; and can never kneel, crouch or crawl.

4

R. 23. The ALJ determined that Hall could not return to her past relevant work (R. 28), but that Hall could work at jobs that exist in significant numbers in the national economy: namely produce inspector, security guard, and hand packager. R. 29. Thus, the ALJ concluded that she was not disabled. R. 29.

Hall submitted additional medical records to the Appeals Council dated November 29, 2010 through April 2, 2012, which were made part of the record. R. 4–5. On June 7, 2012, the Appeals Council denied Hall's request for review (R. 1–3) and this appeal followed.

## **ANALYSIS**

Hall argues that the ALJ erred by 1) failing to properly consider the opinion of Christina Paxton, P.A. and 2) rejecting the opinion of treating psychologist John Heil, M.D. Hall also argues that additional evidence submitted to the Appeals Council and evidence submitted to the court warrant remand of the case pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).

Hall suffers from obesity, degenerative disc disease of the lumbar and cervical spine, chronic back pain, knee pain, depression and anxiety. During the relevant period, Hall sought treatment from her primary care physician for back pain, Sonya Bohon, M.D. for chronic pain, Christina Paxton, P.A. for pain management, George Baylor, M.D. for pain management, Mark Hagy, M.D. for right knee pain, Marc Swanson, M.D. for right leg pain, Jackie Zeltvay, P.A., for depression and substance abuse, and John Heil, LCP for depression and anxiety.

Hall had surgery on her lumbar spine in 1992 and 2000 (R. 24, 42), and a right knee replacement in 2010. R. 542–46, 557–59. Objective tests performed during the relevant period revealed degenerative changes at C4-5 and C5-6 (R. 347), degenerative changes at L4–5 and L5–

5

S1 with narrowing of disc spaces (R. 348), and an annular tear at L5–S1. R. 425. Hall received multiple types of treatment during the relevant period, including epidural steroid injections (R. 423–24, 578), facet nerve blocks (R. 417, 419, 580), a facet rhizotomy (R. 414), injections in her left trapezius (R. 352), left knee injection (R. 410), pain medication (R. 421–22), and physical therapy. R. 604–616, 621. Hall also has a long and continuous history of prescription and non-prescription drug abuse. R. 514, 522, 526, 529, 533, 536, 539–40, 569, 596, 600, 657, 659–60, 667, 671, 677, 725, 731, 733, 735, 737, 744–45, 747, 752–53.

The record contains multiple opinions with regard to Hall's functional limitations arising from her medical conditions. In support of her application for benefits, Hall claimed that she can sit for fifteen to thirty minutes and stand for thirty minutes before she must change positions. R. 48–49. She also stated that she must lie down during the day due to pain. R. 49–50. She reported very limited daily activities, and requires assistance with her personal care, such as showering and putting on socks. R. 51. She also reported the need to elevate her right leg and place it on ice at least four times a day due to swelling. R. 44–45.

On May 7, 2010, state agency physician Brian Strain, M.D., reviewed Hall's records, and found that she was capable of lifting 20 pounds occasionally and lifting 10 pounds frequently; standing and/or walking for a total of four hours a day and sitting six hours in an eight hour day; she will need to change position every two hours; she can occasionally balance, stoop, kneel, crouch, climb ramps and stairs; she should never crawl, climb ladders, ropes or scaffolds; and she should avoid concentrated exposure to fumes and hazards. R. 178–79. On July 27, 2010, state agency physician Bert Spetzler, M.D., reviewed Hall's records and agreed with Dr. Strain's assessment. R. 213–15. The ALJ gave both of these opinions significant weight. R. 27.

6

On December 3, 2010, Hall's treating physician, orthopedic surgeon Mark Hagy, M.D., found that Hall can occasionally lift fifty pounds, frequently lift twenty pounds, and stand and walk for four hours in an eight hour day. He found that Hall requires a sit/stand option, has limited ability to push/pull with her right lower extremity, can occasionally climb, balance, and stoop, and never kneel, crouch or crawl. R. 592–95. The ALJ gave Dr. Hagy's opinion great weight. R. 27.

On December 23, 2010, Christina Paxton, physician's assistant for pain management specialist George Baylor, M.D., completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). R. 632–35. P.A. Paxton found physical limitations identical to Drs. Strain and Spetzler, specifically that Hall can lift twenty pounds occasionally, ten pounds frequently, can stand/walk four hours in an eight hour day, can sit for six hours, and must alternate between standing and sitting. She found that Hall had limited push/pull with her upper and lower extremities, can occasionally balance, and never climb, kneel, crouch, crawl or stoop, and should avoid vibration and hazards. P.A. Paxton also found that Hall would be absent from work twice a month. R. 635. The ALJ did not consider or weigh P.A. Paxton's opinion in his decision.

On February 3, 2011, psychologist John Heil, LDP completed a mental work-related limitations form. R. 650–54. Dr. Heil found that Hall has a poor ability to sustain an ordinary routine and deal with normal work stress; is unable to maintain regular attendance, complete a normal workday, or perform at a consistent pace; is unable to engage in sustained productive activity; and has marked loss of ability to concentrate due to depression. Dr. Heil found that Hall would be absent from work more than three times a month. Dr. Heil noted, "[p]ain and functional limits are the lead cause of impairment of functional activity. Functional abilities are

7

further undermined by psychological conditions which limit reliability, concentration and stress tolerance." The ALJ gave Dr. Heil's assessment no weight, finding it to be unsupported by the totality of the record. R. 21.

### Opinion of Treating Psychologist Dr. Heil

Hall argues that the ALJ erred in giving Dr. Heil's opinion no weight, and in finding that Hall's depression and pain disorder are non-severe impairments. The ALJ is charged with reviewing all of the relevant medical evidence in the record and determining the appropriate weight to which it is entitled, based upon a number of factors. The regulations require that an ALJ give the opinion of a treating physician source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ may give less than controlling weight to a treating physician's opinion, but must give "good reasons" for doing so. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, Civ. Action No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D. W.Va. March 28, 2011). If the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the ALJ must consider the following factors to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5).

There is no question that Dr. Heil, a licensed clinical psychologist, is one of Hall's treating physicians, and thus, pursuant to the regulations, his opinion is entitled to controlling

8

weight unless it is not supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2). The ALJ considered all of Hall's relevant medical evidence in accordance with the regulations, and determined the appropriate weight to give each medical opinion. R. 19–28. The ALJ found that Dr. Heil's opinion that Hall was incapable of performing substantial gainful activity due to her depression and pain disorder was not supported by the totality of the record, and thus gave it no weight. The ALJ may choose to give less weight to the opinion of a treating physician if there is persuasive contrary evidence in the record. Hunter v. Sullivan, 993 F. 2d 31, 35 (4th Cir. 1992).

The ALJ reviewed Hall's mental health treatment, noting that she was initially diagnosed in 2008 with major depression, substance abuse induced mood disorder, polysubstance abuse, opiate dependence, and dependent personality disorder. R. 19. In November 2008, Hall's GAF was assessed at 62.[2] R. 331. On December 1, 2008, Hall reported that she was "doing much better," she is able to sleep all night and wake up refreshed, and her mood is an eight out of ten. R. 330. Hall's GAF was assessed as 70. R. 330. On February 26, 2009, Hall reported that she was doing very well, her depression had lifted, she was in a great mood, and her GAF was assessed at 80.[3] R. 326. Hall's depression fluctuated over the next few years, depending upon her job status, and financial and personal stressors. R. 319–25, 439–41. On October 28, 2010, treatment of Hall's mental health symptoms was returned to her primary care physician. R. 441. On November 16, 2010, Dr. Heil conducted a substance use/abuse assessment of Hall. His

---

[2] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning, on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994)("DSM IV"). A score of 61-70 suggests mild symptoms or some difficulty in social, occupational, or school functioning. Id.
[3] A score of 71-80 suggests no more than slight impairment in social, occupational, or school functioning. DSM IV.

9

impression was that Hall suffered from a significant clinical psychological disorder, primarily depression, and he recommended psychiatric referral for management of depression, anxiety and sleep. R. 586–90. Dr. Heil continued to treat Hall for her depression and anxiety. R. 637–39, 682-89, 784–86, 798. On February 3, 2011, Dr. Heil completed a form titled "Medical Opinion Re: Ability to do Work-Related Activities (Mental)." R. 650–54. Dr. Heil found that Hall had a poor ability to sustain an ordinary routine and deal with normal work stress; was unable to maintain regular attendance, complete a normal workday, or perform at a consistent pace; was unable to engage in sustained productive activity; and had marked loss of ability to concentrate due to depression. Dr. Heil found that Hall would be absent from work more than three times a month. However, Dr. Heil noted, "[p]ain and functional limits are the lead cause of impairment of functional activity. Functional abilities are further undermined by psychological conditions which limit reliability, concentration and stress tolerance." R. 650.

In determining whether Hall's depression and pain disorder were severe impairments, the ALJ considered Dr. Heil's opinion, Hall's mental health treatment records, and Hall's subjective statements with regard to her functional limitations. R. 19–22. The ALJ carefully considered in detail the four functional areas for evaluating mental disorders (activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation), and found that Hall's activities of daily living, social functioning, and concentration, persistence or pace presented no more than mild limitations. The ALJ further found that Hall had experienced no episodes of decompensation that were of extended duration. R. 19–22. In this case, substantial evidence supports the ALJ's decision not to adopt Dr. Heil's opinion, and to instead find Hall's mental impairments non-severe.

Although Hall's treatment records demonstrate that she was diagnosed with and received treatment for depression, diagnosis alone is not evidence of a severe impairment. Cameron v. Astrue, No. 7:10-cv-58, 2011 WL 2945817, at *8 (W.D. Va. July 21, 2011) (citing Gross v. Heckler, 785 F.2d 1163, 1165–66 (4th Cir. 1986); 42 U.S.C. § 423(d)(2)(A)) (finding that a mere diagnosis is insufficient to establish disability). As set forth above, aside from Dr. Heil's opinion, there is no evidence in the record indicating that Hall's mental impairments caused significant limitations on her ability to work. Dr. Heil's treatment notes are sparse, and do not support the severe restrictions set forth in his medical source statement. Dr. Heil's notes consistently list Hall's symptoms as "pain and medical problems," and frequently refer to Hall's family stressors. R. 637–39, 682-89, 784–86, 798. However, they also repeatedly note that Hall's functioning is "fair," and her participation is "good." R. 637–38, 682–84, 686–89, 784–86, 798. The treatment notes describe Hall's symptoms as "pain and medical problems" or "depression" or other similarly general terms. The treatment notes do not state with any specificity situations, events or circumstances reflecting Hall's ability, from a mental standpoint, to maintain social functioning, perform daily activities or complete tasks with a consistent pace or speed.

Hall's previous mental health treatment records also do not support Dr. Heil's restrictive limitations. While Hall consistently complained about depression, her symptoms began improving in February 2009, when she was assessed with a GAF of 80. R. 326. Hall's mental status fluctuated slightly throughout 2009 and 2010, with many of Hall's complaints of depression and anxiety coinciding with situational stressors, such as a divorce and job loss. See, e.g., R. 319–25, 439–41. It should be noted that feelings of sadness as a result of unfortunate life events are not necessarily indicative of any mental pathology requiring medical intervention.

11

Such a reaction is often to be expected under such circumstances. Beavers v. Astrue, 1:10CV00040, 2011 WL 1638607, at *2. (W.D. Va. May 2, 2011). There are no other medical opinions as to Hall's mental impairments or her functional limitations arising from those impairments in the record to support Dr. Heil's opinion.

It would be preferable for the ALJ to state more as to why he rejected totally the opinions of Dr. Heil. Nevertheless, the ALJ indicated that he considered the record as a whole and the opinion reflects that he exhaustively reviewed Hall's mental health history. Furthermore, Dr. Heil acknowledged that Hall's functional limitations related to her physical pain and limitations. From this record, I find that substantial evidence supports the ALJ's conclusion that Hall's mental impairments are non-severe, and that Dr. Heil's contradictory conclusion is not supported by the record.

## **Opinion of Christina Paxton, P.A.**

Hall also argues that the ALJ erred by failing to consider the Medical Source Statement completed by Christina Paxton, P.A., on December 23, 2010. The ALJ did not refer to, consider or weigh P.A. Paxton's Medical Source Statement in his opinion. P.A. Paxton prepared a medical source opinion which contained identical functional limitations from a physical standpoint as the state agency doctors, Brian Strain and Bertram Spetzler. R. 178–79, 213–15, 632–35. Paxton also concluded that Hall's impairments or treatment will cause her to miss work "about twice a month."

Pursuant to 20 C.F.R. § 416.927(d), an ALJ is required to analyze every medical opinion and determine the weight to give such an opinion in making a disability determination. Generally, the ALJ is required to at least consider the opinion of a non-acceptable medical source, such as a physician assistant, especially when there is evidence in the record to suggest

12

that the non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work. Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011); Social Security Ruling 06-03p. The opinions of non-acceptable medical sources, which often have "close contact with…individuals and have personal knowledge and expertise to make judgment about their impairment(s), activities, and level of functioning over a period of time," are to be considered as "valuable sources of evidence for assessing impairment severity and functioning." SSR 06-03p. "However, '[p]rocedural perfection in administrative proceedings is not required' and courts should not vacate a judgment unless the substantial rights of a party have been affected." Cameron v. Astrue, 7:10CV00058, 2011 WL 2945817, at *3 (W.D. Va. July 21, 2011)(citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). Thus, remand is appropriate only when substantial evidence to support the ALJ's decision does not exist. Camp v. Massanari, 22 F. App'x 311 (4th Cir. 2001) (remand not warranted in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988).

Hall's arguments concerning the ALJ's failure to consider the opinion of P.A. Paxton do not warrant reversal or remand of the ALJ's decision. P.A. Paxton is a physician's assistant, and is thus considered a "non-acceptable medical source" under the regulations, although her opinion is still relevant as to Hall's impairment severity and functional effects. 20 C.F.R. §§ 416.913(a), 416.927(c); SSR 06–03p. As Hall concedes, P.A. Paxton's answers regarding Hall's functional limitations are almost identical to the answers given by Hall's treating orthopedic surgeon, Dr. Hagy, and the reviewing state agency physicians, which the ALJ gave great weight and adopted

13

in his RFC. Pl.'s Br. Summ. J. 37. P.A. Paxton's finding that Hall would miss two days of work per month conflicts with the medical opinions of Hall's treating physicians, which under the regulations are entitled to greater weight. See 20 C.F.R. §§ 416.913(a), 416.927(c). Further, Hall points to no evidence in the record to support P.A. Paxton's finding that Hall would be absent from work twice a month. In fact, the treatment notes of Dr. Hagy, who performed a total knee replacement on Hall in August 2010, reflect that in the period leading up to December 2010, the date of Dr. Hagy's functional assessment, Hall had been mowing grass, had good extension and range of motion in her knee, and acknowledged that she was "a lot better than she was before her surgery." R. 617–21. The ALJ most closely aligned Hall's RFC with the functional assessment of Dr. Hagy. The records reflect that Dr. Hagy was actively treating Hall for her physical problems, that he was aware of her condition and, as her treating physician, able to assess her functional abilities. Dr. Hagy was able to consider whether Hall's condition and treatment would require her to miss work.

I find that the ALJ's oversight in failing to consider P.A. Paxton's opinion does not warrant remand because the ALJ's decision, while not procedurally perfect, is supported by substantial evidence. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.")[4] I also find that based upon the record before the court, remanding the case to consider this particular issue

---

[4] The Commissioner argues that the ALJ was entitled to overlook P.A. Paxton's opinion because it does not consider Hall's drug addiction and thus is entitled to no weight. I disagree. There is no question that P.A. Paxton was aware of Hall's substance abuse issues. Dkt. 21, p. 9. P.A. Paxton's treatment notes document Hall's substance abuse history and continuing struggle with substance abuse. R. 571, 572–73, 574, 659, 660–61. Thus, it is fair to assume that P.A. Paxton's assessment of Hall's functional limitations takes into account Hall's complete medical history, including her substance abuse. Additionally, there is no indication from the ALJ that he ignored P.A. Paxton's opinion because it neglected to specifically refer to Hall's substance abuse history.

would not change the ALJ's RFC or his conclusion about Hall's ability to engage in competitive work given her particular RFC.

### Additional Evidence

Hall argues that, as an alternative to summary judgment, this case should be remanded pursuant to sentence four or six of 42 U.S.C. § 405(g) on the basis of both the new evidence she submitted to the Appeals Council and the new evidence she submitted to this Court. Hall submitted medical records to the Appeals Council dated November 29, 2010 through April 2, 2012, which were made a part of the record. The Appeals Council considered these additional records but found that they did not "provide a basis for changing the Administrative Law Judge's decision." R. 2. Hall also submitted additional medical records, dated September 20, 2012 through February 27, 2013, to the court with her summary judgment motion. Dkt. No. 17, Ex. 1–6.

"A claimant seeking a remand on the basis of new evidence . . . must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 n.3 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Id. at 96. When the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, the court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Id. at 95–96. Here, the Appeals Council considered the additional evidence Hall submitted, but found that the information did not provide a basis for changing the ALJ's decision. R. 2.

The additional records submitted to the Appeals Council and those submitted to the court constitute new evidence. There was good cause for Hall's failure to incorporate this evidence into the record during the proceedings before the ALJ, as much of the evidence did not exist until after the ALJ's decision. These new records are not material, however, because they do not relate to the time period before the Commissioner in this action.

The new evidence submitted by Hall includes a CT scan, lumbar x-rays, and a lumbar MRI documenting Hall's degenerative disc disease. R. 715, 717, 754, 757. In July 2012, a discogram was performed on Hall, revealing degenerative disc disease at L4–5, L5–S1 and concordant pain at L5–S1. Based upon the discogram, Hall was referred to Gregory Riebel, M.D. who recommended a lumbar fusion surgery at L5–S1. Hall underwent the spinal fusion surgery on September 20, 2012. Dkt. No. 17–5, p. 4. On February 27, 2013, Dr. Riebel filled out a questionnaire regarding Hall, and checked "yes" when asked if Hall's "L5–S1 degenerative disc disease with foraminal stenosis and discogenic pain that required spinal decompressive facetectomy and fusion, L5–S1 existed prior to February 25, 2011." Dkt. No. 17, Ex. 6.

Hall argues that the lumbar fusion surgery at L5–S1 was required by the degenerative disc disease that she suffered during the relevant period, and thus the records leading up to and after the surgery relate back to the relevant period. The Commissioner argues that the new evidence does not relate back to the relevant period, but rather provides evidence of Hall's deteriorating back condition subsequent to the ALJ's decision.

I agree with the Commissioner. There is no doubt that, as Dr. Riebel states, Hall's degenerative disc disease existed prior to February 25, 2011. Indeed, Hall suffered with this disease for years, both before and after the relevant period at issue here. The records after the ALJ's decision depict a continuation and progression of Hall's disc disease. Hall was eventually

16

referred to and underwent back surgery to address this condition, over a year and a half after the ALJ's decision. There is no evidence in the record, however, that Hall was a surgical candidate during the relevant period. Having reviewed the new records submitted to the Appeals Council and to this court, it is clear that they involve the progression of a degenerative condition over a different time period. Consequently, there is no reasonable possibility that the new evidence would have changed the outcome of this case, and remand is not warranted for consideration of this evidence under 42 U.S.C. § 405(g).

## **RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **GRANTING** summary judgment to the Commissioner, and **DENYING** the plaintiff's motion for summary judgment. The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: February 18, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge